HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STARR INDEMINTIY & LIABILITY CO. as subrogee of NAVISTAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRANSFAIR NORTH AMERICA INTERNATIONAL FREIGHT SERVICES D/B/A TRANSFREIGHT, <br><br> Defendant. | CASE NO. C17-697 RAJ <br><br> ORDER |

This matter comes before the Court on Defendant and counterclaimant Transfair North American International Freight Services, LLC d/b/a Transfreight Express Lines' ("Transfreight") Motion for Summary Judgment. Dkt. # 14. Plaintiff opposes, and Transfreight has filed a Reply. Dkt. ## 15, 16. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons that follow, Transfreight's Motion for Summary Judgment is **GRANTED**. Dkt. # 14.

## I. BACKGROUND

The parties do not dispute the facts of this case. Transfair North America International Freight Services, LLC and its corporate predecessor provide international

ORDER – 1

ocean transportation and transportation-related services to its customers, including as a non-vessel-operating common carrier ("NVOCC") in international commerce with licensing from the Federal Maritime Commission. Dkt. # 14-2 at p. 4, ¶ 5. As an NVOCC, Transfair North America International Freight Services, LLC books ocean transportation for its customers' cargoes aboard ships owned or operated by steamship companies, in some cases by chartering the ships. *Id*. at ¶ 6. Transfair North America International Freight Services, LLC now uses the trade name "Transfreight Express Lines." *Id*. at ¶¶ 7-8.

In early to mid-May 2016, Transfreight received a request from Navistar to arrange the transportation of 700 used tractor units from the Port of Houston, Texas to Hai Phong Port, Vietnam. *Id*. at ¶ 9. Transfreight Express Lines chartered the ship M/V THORCO ALLIANCE from Thorco Projects ("Thorco") to perform the carriage of 153 of the used tractor units (the "Cargo"). *Id*. at p. 5, ¶ 10. Transfreight Express Lines issued bill of lading number 93716-06008 for that carriage. *Id*. at ¶ 11; Dkt. # 14-1 at 12-15.

The M/V THORCO ALLIANCE started its voyage to Vietnam on or about July 8, 2016. Dkt. # 14-2 at p. 5, ¶ 12. On August 15, 2016 the M/V THORCO ALLIANCE experienced a total engine breakdown that required the ship's towing to Japan. *Id*. at ¶ 13, pp. 9-11. Transfreight Express Lines notified Navistar of the breakdown on that same date. *Id*. at ¶ 14, pp. 12-20.

Since the time of the booking, Transfreight Express Lines knew from Navistar that the Cargo's delivery in Vietnam had to take place by a certain date to allow the Cargo's entry into that country, for the Cargo's sale there. *Id*. at ¶ 15. After learning of the breakdown and notifying Navistar of the same, for the next several weeks, Transfreight Express Lines communicated regularly with Thorco and Navistar to arrange for the Cargo's timely delivery to Vietnam. *Id*. at ¶ 16. In the first instance, Thorco arranged to

tow the M/V THORCO ALLIANCE, still laden with the Cargo, to Japan. *Id*. at pp.6-7, ¶ 17. After more than two months of negotiations between Transfreight Express Lines and Thorco and communications between Transfreight Express Lines and Navistar, Transfreight Express Lines arranged for the Cargo's transshipment onto the ship FREDENSBORG, to continue the Cargo's carriage to Vietnam. *Id*. at p. 7, ¶ 18.

In an October 18, 2016 e-mail, Navistar stated to Transfreight Express Lines: "This email is confirming that we want Transgroup [Transfreight Express Lines] to move forward with the booking of the ship." Dkt. # 14-2 at p. 7, ¶ 19, pp. 21-23. At Navistar's request, Transfreight arranged to change the port of discharge from Haiphong to Ho Chi Minh City. *Id*. at ¶ 20, pp. 24-26. Transfreight Express Lines issued a revised bill of lading on or about November 2, 2016, again with Navistar as the shipper, which bill of lading was for the Cargo's continued carriage to Vietnam (the "Revised Bill of Lading"). *Id*. at pp.7-8, ¶ 21; Dkt. # 14-1 at pp. 16-20. The Original Bill of Lading and Revised Bill of Lading contain identical "Terms & Conditions" on their reverse pages. *Id*. at pp. 12-20. Those Terms & Conditions state in relevant part:

> 1. Definitions "Carrier" means TRANSFREIGHT EXPRESS LINES, a division of Transgroup International. "Merchant" includes the shipper, the consignee, the receiver of the goods, the holder of this Bill of Lading, any person having a present or future interest in the goods or any person acting on their behalf.
>
> . . .
>
> 14. Route of Carriage: Matters Affecting Performance . . . If at any time the carriage is or is likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (including the condition of the goods), whenever and however arising (whether or not the carriage has commenced) Carrier may a) without notice to Merchant abandon the carriage of the goods and where reasonably possible place the goods or any part of them at Merchant's disposal at any place which Carrier may deem safe and convenient and the responsibility of Carrier in respect of such goods shall then cease. b) without prejudice to the Carrier's right subsequently to abandon the carriage under a) above, continue the carriage.

ORDER – 3

> In any event the carrier shall be entitled to full freight charges on goods received for carriage and Merchant shall pay any additional costs resulting from the above mentioned circumstances.
>
> 15. Freight Freight shall be deemed fully earned on receipt of the goods by Carrier and shall be paid whether or not the cargo was lost or damaged. Merchant shall be liable to Carrier for freight and all other charges regardless of whether the shipment was prepaid or freight collect.

*Id*. The FREDENSBORG timely delivered the Cargo to Vietnam. Dkt. # 14-2 at p.8, ¶ 22. Transfreight Express Lines sent Navistar an invoice for $252,500, which was for the carriage's freight, plus charges to discharge the Cargo from the M/V THORCO ALLIANCE, to load the Cargo onto the FREDENSBORG, and other terminal-handling and coordination charges. *Id*. at ¶ 23, pp. 27-28.

On May 4, 2017, Plaintiff Starr Indemnity and Liability Company ("Plaintiff"), as subrogee of Navistar, filed suit against Navistar and the M/V THORCO ALLIANCE for recovery of the $252,500 in additional freight charges, which Plaintiff had paid to Navistar under its insurance policy. Dkt. # 1. Although Plaintiff did not cite any particular law or statute, Plaintiff claimed that Transfreight and the M/V THORCO ALLAINCE "were negligent, breached their contractual obligations, and failed to exercise due diligence to render the vessel seaworthy at the commencement of the voyage from Houston, Texas." *Id*. at p. 3, ¶ 9. Transfreight counterclaimed for a declaratory judgment that it had no obligation to pay the $252,500 sought by Plaintiff's Complaint. Dkt. # 8.

On March 23, 2018, Transfreight filed this Motion for Summary Judgment; Plaintiff opposed, and Transfreight filed a Reply. Dkt. ## 14, 15, 16.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a

ORDER – 4

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

### III. DISCUSSION

Transfreight argues that it is entitled to summary judgment because Navistar, for which Plaintiff is subrogee (having paid Navistar for the freight charges through its

ORDER – 5

insurance policy), signed two bills of lading that expressly allocated the risk of delay (and any costs arising therefrom) to Navistar, not Transfreight.  Dkt. # 14 at 3.

As to Plaintiff's claim under the bill of lading, the Court applies traditional contract law.  Federal courts interpret and resolve disputes concerning maritime contracts according to federal law.  *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004)).  "Since the bill of lading is a contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction."  *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001) (quoting *Henley Drilling Co. v. McGee*, 36 F.3d 143, 148 n. 11 (1st Cir. 1994)).  "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first."  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).  "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."  *Starrag*, 486 F. 3d at 616 (citing *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

The parties do not disagree on the existence or applicability of each bill of lading, the meaning of the terms, or the right and duties created by the terms.  Indeed, Plaintiff does not dispute that it sued Transfreight under the bills of lading and in so doing accepted their terms.  *All Pac. Trading v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993) ("At the very least, Plaintiffs' initiation of this suit constituted acceptance of the terms of the Hanjin bills of lading.") *cert. denied sub nom. Hanjin Container Lines v. Tokio Fire & Marine Ins. Co.*, 510 U.S. 1194 (1994).  Plaintiff does not dispute that Navistar was a "Merchant" under the bills of lading. Dkt. # 14 at 12-13.  Nor does Plaintiff dispute that the bills of lading expressly allocated to the "Merchant" the additional freight costs associated with "any hindrance, risk, delay, difficulty or

ORDER – 6

disadvantage of any kind" in the delivery of the cargo. *Id*. at 13-15; Dkt. # 14-1 at pp. 12-20. Plaintiff does not dispute that under the bill of lading, freight was due upon receipt of the cargo. Dkt. # 14-1 at pp. 14, 18, ¶ 15. The Court, having independently reviewed both bills of lading, finds these constructions to be valid. Accordingly, the Court concludes that, under the bills of lading, Plaintiff does not have a right to recovery for the freight charges.

Plaintiff's only argument in response is that Transfreight violated a duty to exercise due diligence to make the ship seaworthy under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701 *et seq.* Dkt. # 15. Plaintiff argues that Transfreight's status as a "carrier" under COGSA meant that it had to guarantee a seaworthy vessel, and the fact that the M/V THORZCO's engine failed mid-voyage indicates that Transfreight violated this duty.[1] *Id*. Plaintiff argues that because of this violation, Transfreight should be liable for the additional freight costs associated with the transport of the cargo from Japan to Vietnam, and should repay Plaintiff for the amount it paid to Navistar under its insurance policy.

COGSA sets forth the responsibilities, liabilities and rights of carriers involved in the carriage of goods into the United States from ports outside of the United States. A "carrier" is defined in the statute as the "owner, manager, charterer, agent, or master of a vessel." 46 U.S.C. § 30701. The statute imposes a duty upon carriers to properly load, handle, stow, care for, and discharge the goods carried, and prohibits them from

---

[1] The Court notes that Plaintiff does not cite to any evidence in the record that would indicate that the engine failure of the M/V THORCO ALLIANCE was the result of any lack of due diligence before the voyage commenced. *See, e.g.*, *Squillante & Zimmerman Sales, Inc. v. Puerto Rico Marine Mgmt., Inc.*, 516 F. Supp. 1049, 1052 (D.P.R. 1981), *aff'd*, 685 F.2d 421 (1st Cir. 1982) ("Although the duty of the carrier to exercise due diligence to make the ship seaworthy applies before and at the beginning of the voyage, the obligation of making the vessel seaworthy is either fulfilled or not fulfilled when the vessel breaks ground on the voyage.")(citing Gilmore and Black, The Law of Admiralty, 2d Ed. 1975, p. 152). The Court will not assume, without evidence as to cause, that the M/V THORCO ALLIANCE was unseaworthy solely because it had an engine failure mid-voyage. However, because COGSA does not apply in this case, the Court finds resolution of this issue unnecessary.

ORDER – 7

contracting out of liability for breach of this duty. *See* 46 U.S.C. § 30704. The statute also imposes a duty upon the carrier to "exercise due diligence to . . . make the vessel seaworthy," 46 U.S.C. § 30705(a)(1), (b), with seaworthiness being defined as "'the ability of a vessel adequately to perform the particular services required of her on the voyage she undertakes.'" *GTS Indus. S.A. v. S/S "Havtjeld",* 68 F.3d 1531, 1535 (2d Cir. 1995) (quoting *McAllister Lighterage Line, Inc. v. Ins. Co. of N. Am.,* 244 F.2d 867, 870 (2d Cir. 1957)).

The parties both agree that Transfreight is a "non-vessel-operating common carrier," which is "an ocean transportation intermediary who is 'a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier.'" *Tarnawski v. Schenker, Inc.*, No. C02-5659FDB, 2003 WL 22721987, at *1 (W.D. Wash. May 6, 2003). Dkt. # 14 at 6-7, Dkt. # 15 at 4-7. As an NVOCC that issued a bill of lading, Transfreight could be considered a "carrier," within the meaning of COGSA. *See Strickland v. Evergreen Marine Corp. (Taiwan)*, No. 05-695 PK, 2007 WL 539424 (D. Or. Feb. 15, 2007) ("An NVOCC is a carrier in relation to the shipper, although it is a shipper in relation to the vessel . . . Carriers, including NVOCCs, are subject to COGSA . . . .").

Here, Plaintiff seeks to impose a duty on Transfreight to exercise due diligence to make the ships it charters seaworthy. It is true that as a "carrier," NVOCCs would seemingly be held to all responsibilities and liabilities applied to "carriers" under COGSA, a law initially passed in 1936, including the duty to exercise due diligence to make a ship seaworthy. However, it is not clear to this Court that this result was intended or warranted. By definition, NVOCCs are non-vessel-operating intermediaries, and do not have physical control over specific vessels. NVOCCs, which do not operate vessels, are not likely to have the right or practical ability to inspect ships for seaworthiness or

ORDER – 8

order reapirs. It strikes this Court as unrealistic to hold NVOCCs to impossible duties.[2] Indeed, a recent law review article observed that "[n]o American case has expressly held that an NVOCC has a duty to exercise due diligence to make a ship seaworthy." Andrew D. Kehagiaras, Duty Call: Do Nvoccs Have A Duty to Exercise Due Diligence to Make A Ship Seaworthy?, 27 U.S.F. Mar. L.J. 37, 63 (2015).

Nonetheless, the Court need not reach this issue now, because COGSA does not apply to the present dispute. To make a claim under COGSA, a shipper has the burden of proving that the cargo was damaged while in the custody of the carrier (i.e., loaded in good condition, discharged in damaged condition). *American Home Assur. Co. v. American President Lines, Ltd.,* 44 F.3d 774, 777 (9th Cir. 1994). Once such evidence has been received, a prima facie case has been shown and the burden of proof shifts to the carrier to establish that the loss came under a statutory exception to COGSA. *Taisho Marine & Fire Ins. v. M/V Sea-Land Endurance,* 815 F.2d 1270, 1274-75 (9th Cir. 1987); *Stucco & Const. Materials, Inc. v. Trans-Net, Inc.*, No. C08-1299RSM, 2010 WL 546912, at *2 (W.D. Wash. Feb. 11, 2010).

Transfreight argues that COGSA is inapplicable to the present dispute because the cargo in question was not damaged in any way. The Court agrees. A prima facie COGSA claims requires proof of damage to cargo. *Am. Home Assur. Co. v. Am. President Lines, Ltd.*, 44 F.3d 774, 777 (9th Cir. 1994)("To establish a prima facie case, American Home had to prove that the fruit was delivered to APL in good condition and that APL delivered the fruit in a damaged condition."). COGSA applies to loss or damage to the cargo itself. *Travelers Indem. Co. v. Vessel Sam Houston*, 26 F.3d 895, 898 (9th Cir. 1994)("COGSA regulates the liability of international carriers for loss or damage to cargo"). Had cargo damage been suffered because of the engine malfunction in the instant case, COGSA would control the rights, responsibilities, and liabilities of the

---

[2] Plaintiff does not provide, and the Court cannot otherwise find, any authority that applies any common law duty to make a ship seaworthy outside of COGSA to NVOCCs.

ORDER – 9

parties. *Id.*; *see also Narcissus Shipping Corp. v. Armada Reefers, Ltd.*, 950 F. Supp. 1129, 1141 (M.D. Fla. 1997), *amended*, 986 F. Supp. 1383 (M.D. Fla. 1997). However, absent cargo damage, COGSA does not govern the parties' dispute. *See, e.g.*, *Canon USA, Inc. v. Nippon Liner Sys., Ltd.*, No. 90 C 7350, 1992 WL 82509 (N.D. Ill. Apr. 17, 1992)("Therefore, because there is no contention that the copiers were damaged while at sea or over any other waterway, we hold COGSA to be inapplicable"). Plaintiff provides no authorities that suggest that COGSA can apply in cases where there is no damage to cargo. Plaintiff relies most heavily on *Marine Office of Am. Corp. v. Lilac Marine Corp.*, 296 F. Supp. 2d 91 (D.P.R. 2003), but even this case makes clear that "[i]n order to establish the carrier's liability for loss or damage to cargo under COGSA, the claimant must first establish a prima facie case to demonstrate that the goods were damaged while in the custody of the carrier." *Marine Office of Am. Corp. v. Lilac Marine Corp.*, 296 F. Supp. 2d 91, 100 (D.P.R. 2003). Plaintiff makes no such claim here, and has conceded that the Cargo was delivered to Vietnam undamaged.

Even if Transfreight did not arrange the second voyage from Japan to Vietnam, resulting in the Cargo remaining in Japan and the delayed delivery thereafter, it is doubtful that Plaintiff would have a remedy under COGSA because there is no evidence of any resulting "damage" to the Cargo. COGSA does not require that goods be delivered by a specific time and there are no provisions in COGSA relating to delay. As this Court has already recognized, COGSA has "no statutorily imposed duty or obligation on the part of a carrier to deliver goods in a timely fashion or by an agreed upon date." *Pioko Fashions, Inc. v. Am. President Lines, Ltd.*, No. C92-1210C, 1993 WL 597151 (W.D. Wash. June 30, 1993). Detention or delay that is "wholly unconnected with physical loss or damage to [cargo]" is outside the scope of COGSA. *Hellenic Lines, Ltd. v. Embassy of Pakistan*, 467 F.2d 1150, 1156 (2d Cir. 1972). Thus, a provision disclaiming liability for delay is not in conflict with COGSA. *In re Tidewater Barge*

ORDER – 10

*Lines, Inc.*, No. 03-CV-1225-ST, 2005 WL 3992445, at *9 (D. Or. Nov. 30, 2005) (holding that "under COGSA, a bill of lading may transfer liability from the carrier to the shipper for any damage (not just cargo damages) arising from the shipper's negligence"). In essence, the fact that Navistar and Transfrieght entered into a new agreement to ensure that the Cargo arrived in Vietnam by a particular date does not mean that a COGSA violation exists; on the contrary, it created a separate enforceable contractual agreement. Both agreements expressly assigned the cost of additional freight charges to the shipper or "Merchant" – here, Navistar.

Ultimately, Plaintiff cannot escape the fact that its concession that the cargo arrived undamaged renders its COGSA claim inapplicable. Accordingly, applying ordinary contract principles to the express language of the bills of lading signed by Navistar, Transfreight is not liable for the additional freight charges incurred as a result of the M/V THORCO ALLIANCE's engine failure. Plaintiff does not offer any other theory of liability against Transfreight, and the Court cannot discern one in its own review of the record. Accordingly, there is no genuine issue of material fact and summary judgment is appropriate.

## IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Transfreight's Motion for Summary Judgment. Dkt. # 14.

Dated this 22nd day of August, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER – 11